# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**CIVIL ACTION NO: 3:07CV-491-JHM**

**MARCHMOND COTTRELL**                                                             **PLAINTIFF**

**v.**

**SCOTT HAAS, MD., et al.**                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion for summary judgment by the Defendant, Roy Washington ("Washington") [DN 101]. Fully briefed, this matter is ripe for decision

### I. SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

Plaintiff Marchmond Cottrell ("Cottrell"), an inmate incarcerated at the Kentucky State Reformatory, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Scott Haas, Kentucky Department of Corrections Medical Director, and Roy Washington, ARNP Care Provider at the Kentucky State Reformatory, in both their individual and official capacities. Cottrell claims that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to treat his nerve damage from a past gun shot wound and his Hepatitis C. Plaintiff received medical treatment by Washington from December 2005 until October 2007.

The record reflects that Washington first saw Cottrell on December 22, 2005. At that time Cottrell presented with chronic left upper extremity pain. Washington ordered continued physical therapy, prescribed, and ordered lab work to evaluate him for de-ironing. Washington scheduled a follow-up appointment. On January 31, 2006, Cottrell returned to see Washington complaining that he had not received the Neurontin prescribed and requesting his pain medications be changed. Washington confirmed with prison officials that Cottrell was receiving all of his medications and noted that he had an appointment with mental health services to assist with pain control. Washington requested to see Cottrell in one month. At his follow-up appointment on February 28, 2006, Cottrell reported that the Neurontin was controlling his pain. Washington added another pain reliever to Cottrell's treatment and instructed Cottrell to return as needed.

2

On May 5, 2006, Cottrell returned reporting that the Neurontin was reducing the burning sensation in his arm, but he was experiencing breakthrough pain. Washington prescribed Vicodin. The supervising physician denied the prescription for Vicodin, instead adding a different pain reliever. A follow-up appointment was scheduled for Cottrell in three months. On September 1, 2006, Washington again prescribed Vicodin for Cottrell, ordered lab work to check on alanine aminiotransferase (ALT) levels in Cottrell's blood, and ordered a physical therapy consult. Washington scheduled a follow-up appointment with Cottrell in six weeks. On September 13, 2006, Cottrell returned requesting a neurological consult. Washington suggested an orthopedic consult instead. On September 21, 2006, Washington met with Cottrell regarding his Hepatitis C and reviewed his blood work which came back within the normal limits. As a result of the normal ALT values, Cottrell did not qualify for Hepatitis treatment. Washington discussed pain management with Cottrell informing him that due to the high dosage of Neurontin, Vicodin could not be prescribed. Plaintiff chose to continue Neurontin and Darvocet was prescribed for pain instead.

On October 13, 2006, Cottrell met with Washington for pain management review. Cottrell complained that he had not received the orthopedic consult yet nor the additional pain reliever ordered. In response to Cottrell's complaints, Washington sent an email reminder to Dr. White to co-sign the Darvocet order, explained to Cottrell that he should keep his orthopedic appointment, and scheduled a follow-up in April of 2007 after his next Hepatitis C labs were due. On December, 4, 2006, Cottrell returned to see Washington regarding his chronic left arm pain. Washington requested a consult for Cottrell with the prison Pain Clinic. Washington instructed Cottrell to stay on Naporxen.

On April 18, 2007, Cottrell reported to Washington that the Darvocet he had been prescribed

was reducing his left arm pain and Washington encouraged a continuation with the prison pain management program. At his follow-up in June of 2007, Cottrell reported that he had completed the prison pain management program. Because Darvocet gave him an upset stomach, Washington offered Cottrell alternative pain medications which Cottrell refused. Washington noted that Cottrell's chronic pain was stable and renewed his prescriptions for Darvocet and Naporxen. He was instructed to return in sixty days.

At his follow-up on August 10, 2007, Cottrell reported experiencing abdominal pain with Darvocet. Washington prescribed Ultram instead and asked him to return in eight weeks after his liver function tests were in. On October 8, 2007, Washington reported that Cottrell's blood work was within the normal limits and replaced the Darvocet with Tramadol. Washington scheduled a follow-up appointment at that time.

As a result of the Defendants' alleged actions, Cottrell filed suit in September of 2007. On initial review pursuant to 28 U.S.C. §1915A, the Court dismissed Plaintiff's official capacity claims for money damages because state officials and employees sued in their official capacities for damages are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Dr. Haas moved for summary judgment and was dismissed from the action on April 7, 2009. Defendant, Roy Washington, now moves for summary judgment on the Eighth Amendent claim arguing that he was not deliberately indifferent to Plaintiff's medical needs because he reasonably responded to all requests for medical attention. Defendant further argues that without expert medical testimony, Plaintiff is unable to establish deliberate indifference.

## III.  DISCUSSION

Cottrell's federal claim for damages arises under 42 U.S.C. § 1983 which provides in part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must establish "both that 1) []he was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law."  Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001) (citation omitted).

### A.  Individual Capacity Claims

To establish that a prison official, in his individual capacity, was deliberately indifferent to an inmate's serious medical needs, a plaintiff must establish two elements.  See Comstock v. McCrary, 273 F.3d 693, 702-03 (6th Cir. 2001).  The first element is an objective element, which requires a plaintiff to show that the inmate's medical needs were "sufficiently serious."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The second element is a subjective element, which is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  "Complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief."  Lewis v. McClennan, 7 F. App'x 373, 375 (6th Cir. 2001) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Furthermore, "[a] prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation, . . . and, where the prisoner has received some medical

5

attention and now disputes the adequacy of that treatment, the federal courts are reluctant to second-guess prison officials' medical judgments and to constitutionalize claims which sound in state tort law." Id. (citing Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)) (internal citation omitted).

Plaintiff in his Complaint alleges that he has "nerve damage due to a gun shot wound that causes [his] chronic pain, as well as Hepatitis C," and that he is not "getting treatment for either." Plaintiff alleges that he should be evaluated by a neurologist or a pain clinic. Plaintiff also contends that he has been refused "the standard level of pain medication for such a wound, and pain levels." (Complaint at ¶ IV.) Additionally, in response to the current motion for summary judgment, Plaintiff argues that the crux of his complaint is that Washington failed to adequately follow through with his superiors to ensure the Plaintiff received the medical care that Washington recommended and that the Plaintiff needed. Plaintiff maintains that by not advocating for his patient, Washington was being deliberately indifferent to Plaintiff's medical needs.

Based on the evidence in the record, and when viewing the evidence in the light most favorable to the Plaintiff, the Court finds that there is simply insufficient evidence to show that Washington deprived Cottrell of a right secured by the Constitution, i.e. that Washington was deliberately indifferent to Cottrell's serious medical needs. In fact, Plaintiff received medical treatment on multiple occasions for his chronic left arm pain and Hepatitis C during the period from December 2005 until October 2007 from not only Washington, an advanced registered nurse practitioner, but also other medical providers such as physicians and physical therapists. Washington prescribed numerous medications, physical therapy, and therapeutic devices for Cottrell for his chronic left arm pain. Washington scheduled regular pain management reviews of Cottrell

6

and multiple follow-up appointments. Additionally, Washington evaluated and monitored Cottrell's liver functions on a regular basis to determine whether additional treatment for his Hepatitis C was necessary. The blood work indicated Cottrell's levels were within normal levels indicating that additional treatment was not appropriate. Finally, contrary to Cottrell's argument, the record reflects that Washington followed up often with the supervising physicians regarding medication choices, prescriptions requiring co-signatures, and continued therapy for management of Cottrell's pain. In fact, in some instances the physician denied Washington's prescription order for specific pain medications and substituted equivalent pain medications. Nothing in the record reflects that Washington displayed a deliberate indifference to Plaintiff's medical needs.

In the present case, the facts clearly demonstrate that Washington provided medical care to Plaintiff, the dispute is over the adequacy of the medical care. As noted above, in cases like this, where the dispute is over the adequacy of medical treatment, the "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake, 537 F.2d at 860 n. 5; Jennings v. Al-Dabagh, M.D., 2004 WL 957817, *1 (6th Cir. April 29, 2004). For the reasons set forth above, the Court finds that Plaintiff has failed to establish the subjective component of the deliberate indifference standard, and, summary judgment in favor of Washington on this claim is granted.

### B. Official Capacity Claim

Furthermore, any remaining official capacity claims for injunctive relief fail because, as discussed above, Cottrell has failed to show that a state actor violated his constitutional rights. Unless there is an underlying constitutional deprivation, the Kentucky State Reformatory cannot be liable. See Claybrook v. Birchwell, 199 F.3d 350, 361 (6th Cir. 2000) (unless a state actor inflicts

7

a constitutional deprivation upon the plaintiff, a municipality cannot be liable even if a county policy authorized unconstitutional conduct) (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Accordingly, summary judgment in favor of Washington in his official capacity is appropriate.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment by the Defendant, Roy Washington, in his individual and official capacity [DN 101] is **GRANTED**.

.

cc:     Counsel of Record